IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KENIO CRICHLOW, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 22-272-RGA |
| DELAWARE DEPARTMENT OF CORRECTION, et al., | : |
| Defendants. | : |

**MEMORANDUM ORDER**

**I.     INTRODUCTION**

Plaintiff Kenio Crichlow[1] appears *pro se* and proceeds *in forma pauperis*. (D.I. 5). On March 1, 2022, he filed this action pursuant to 42 U.S.C. § 1983.[2] (D.I. 3). Before the Court are Defendants' motions to dismiss. (D.I. 23, 30). Plaintiff has been granted two extensions, the first one nearly six months ago, but still has not filed responses. (D.I. 29, 34). Another extension request, filed weeks after the previous extended deadline, is currently pending. (D.I. 37). Plaintiff's extension request will be denied, and the Court will address the pending motions to dismiss without the benefit of responses from Plaintiff.

---

[1] Plaintiff's typed name appears six times in the complaint, three times as "Keino Crichlow," one time as "Kenio Crichlow," once as "Keith Crichlow," and once as "Kenio Crischlow." I use "Kenio Crichlow." The envelope the complaint was mailed in has a return address with the handwritten name "Kenio Crichlow."

[2] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## II. BACKGROUND

Plaintiff is incarcerated at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware. In his Complaint, Plaintiff named as Defendants the Delaware Department of Correction ("DDOC"), Delaware Governor John Carney, Delaware Department of Human Resources Secretary Claire DeMatteis, DDOC Medical Director Dr. Awele Maduka-Ezeh, JTVCC Warden Robert May, JTVCC Deputy Warden Philip Parker, Captain David Peck, Lieutenant Keshaw Travies (collectively, "State Defendants"), and JTVCC Medical Director, Dr. Emilia Adah, who in April 2020 was employed by Centurion of Delaware, LLC, which at that time was health services provider for the DDOC.

I take the factual allegations of the Complaint as true and construe them in the light most favorable to Plaintiff. On April 30, 2020, Plaintiff and 20 other inmates housed at JTVCC were informed that they had testified positive for COVID-19.[3] Plaintiff was "seriously ill." (D.I. 3 at ¶ 16). Defendants Captain Peck and Lieutenant Travis ordered Plaintiff, and the other twenty COVID-positive inmates, to walk two blocks to another unit at JTVCC in "drenching rain," while pushing carts containing their personal effects. (*Id.*). Plaintiff did not have a coat or rain gear. He was later transferred to a hospital for treatment once for four days and then again for another six days.

Plaintiff alleges that he contracted COVID-19 "as a result of the policies, practices and actions adopted and undertaken by the defendants," which "create a heightened and unreasonable risk of exposure to COVID-19," including "[a] substantial

---

[3] Plaintiff filed this suit as a class action, with a putative class of the other 20 inmates, but I denied his motion for class certification. (D.I. 13).

2

risk of severe illness and death for the plaintiff who is elderly, [and] medically vulnerable." (*Id.* at ¶ 1). He further alleges, "Each of the defendants were fully aware of the seriousness of [a] Covid-19 problem at J.T.V.C.C., and had nothing in place to address it." (*Id.* at ¶ 17). He specifically alleged that the beds in Dorms T1 and T2 were welded to the floor, that each dorm housed 50 inmates, that some inmates refused to be vaccinated, and that Defendants Carney and DeMatteis had stated in the news media that they refused to release inmates with serious medical issues. (*Id.* at ¶ 3). At the time Plaintiff filed the Complaint, 13 inmates housed in Dorms T1 and T2 had died from COVID-19. (*Id.* at ¶ 1). Plaintiff speculated, "Absent the implementation of and strict adherence to emergenc[y] measures that comply with recommended public health and safety measures the current delta variant will possibly double [the] number of previous deaths in these two dorms." (*Id.* at ¶ 2).

Plaintiff seeks damages and "injunctive relief that would require, among other things, Defendant[s] to comply with recognized public health and safety measures as adopted by the Center for Disease Control and Prevention ("CDC") to prevent the spread of the virus for those confined at [JTVCC]." (*Id.* at 5 & ¶ 5). He also seeks injunctive relief directing at least six feet of spacing between the bunks in the two dorms. (*Id.* at 5).

Both the State Defendants and Defendant Adah have filed motions to dismiss. (D.I. 23, 30). As noted, despite having been granted two extensions, Plaintiff has not filed a response to either motion.

## III. LEGAL STANDARD

In reviewing a motion filed under Fed. R. Civ. P. 12(b)(6), I must accept all

3

factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and the Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* at 94. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV.  DISCUSSION

Although Plaintiff was allowed to proceed on his claims following screening (D.I. 9), I now have the benefit of adversarial briefing, and I have concluded that many of the claims and Defendants must be dismissed.

I note generally that other than the walking in the rain assertions (D.I. 3 at ¶ 16), which are fairly detailed, the wider-ranging allegations are only hinted at in a conclusory fashion.

### A.  Injunctive Relief

First, to the extent that Plaintiff seeks injunctive relief in the form of preventative measures at JTVCC regarding COVID-19, the measures he seeks are moot in light of current less rigorous guidance from the Center for Disease Control, *see* Guidance on Management of COVID-19 in Homeless Service Sites and in Correctional and Detention Facilities, Updated May 11, 2023, https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-correctional-settings.html (last visited Aug. 3, 2023), as well as well as previous decisions of this Court concluding that the DDOC and JTVCC responses to COVID-19 were not deliberately indifferent. *See, e.g.*, *Gibbs v. Carney*, 2022 WL 3681327, at *4 (D. Del. Aug. 25, 2022) (concluding based on public documents that Defendant Governor Carney, via the DDOC, "responded quickly and vigorously to the pandemic"); *Brown v. May*, 2021 WL 7209444, at *2-3 (D. Del. Dec. 17, 2021) (taking judicial notice of preventive actions taken by DDOC in case brought by JTVCC inmate, dismissing deliberate-indifference claims for failure to state a claim, and deeming amendment futile).

**B.     Sovereign Immunity**

Plaintiff sued Governor Carney and Secretary DeMatteis in their official capacities only. Damages are unavailable under § 1983 when state officials are sued in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). This is the case because § 1983 permits suits only against "persons," *id.*, and "state officials acting in their official capacities are not 'persons' under § 1983." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996).[4] Accordingly, the claims for damages against Defendants Carney and DeMatteis, and the claims for damages against the other State Defendants in their official capacities, will be dismissed.

**C.     Defendants Maduka-Ezeh, May, and Parker**

The remaining State Defendants were sued in their individual capacities in addition to their official capacities. In considering the deliberate-indifference claims against DDOC Medical Director Madka-Ezeh, JTVCC Warden May, and JTVCC Deputy Warden Parker, which were policy-based claims, and lacking in any individualized allegations, I agree with the above-referenced cases in this Court that the DDOC and JTVCC responses to the COVID-19 pandemic were not deliberately indifferent. Accordingly, the claims against these Defendants in their individual capacities will be dismissed. *Gibbs*, 2022 WL 3681327, at *4; *Brown*, 2021 WL 7209444, at *2-3.

---

[4] Although a suit seeking prospective injunctive relief can be brought against an official in his or her official capacity, *see Merritts v. Richards*, 62 F.4th 764, 771-73 (3d Cir. 2023), as noted, Plaintiff's requests for injunctive relief will be dismissed as moot.

### D. Defendant Adah

The deliberate indifference claim against JTVCC Medical Director Adah is dismissed for the same reasons the deliberate indifference claims against the State Defendants were dismissed, as discussed in Section IV.C.

To the extent Plaintiff raises negligence claims under state law, in Delaware, medical malpractice is governed by the Delaware Health Care Negligence Insurance and Litigation Act. *See* 18 Del. C. §§ 6801-6865. When a party alleges medical negligence, Delaware law requires the party to produce an affidavit of merit with expert medical testimony detailing: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury. *Bonesmo v. Nemours Foundation*, 253 F. Supp. 2d 801, 804 (D. Del. 2003) (quoting *Green v. Weiner*, 766 A.2d 492, 494-95 (Del. 2001)) (cleaned up); 18 Del. C. § 6853. Because Plaintiff alleges medical negligence, at the time he filed the Complaint he was required to submit an affidavit of merit signed by an expert witness. *See* 18 Del. C. §6853(a)(1). Plaintiff failed to accompany the Complaint with an affidavit of merit as required by 18 Del. C. § 6853(a)(1). Accordingly, any arguable medical negligence claim against Defendant Adah will be dismissed.

### E. Defendants Peck and Travis

Plaintiff alleges that Defendants Peck and Travis were deliberately indifferent by ordering him to walk two blocks to another unit at JTVCC in pouring rain without a coat or rain gear when they knew he was seriously ill with COVID-19. A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*,

511 U.S. 825, 837 (1994).

Defendants Peck and Travis argue that Plaintiff failed to state a claim because "the weather is beyond the[ir] control," "simply alleging a practice of relocating COVID-19 positive inmates to a single overcrowded building is not unreasonable and does not sufficiently plead deliberate indifference," and "prison officials are granted broad discretion in the operation of correctional institutions and this Court has stated that 'federal courts are not overseers of the day-to-day management of prisons, and the Court will not interfere in the DOC's housing decisions during the COVID pandemic.'" (D.I. 24 at 11) (quoting *Harris v. Centurion*, 2021 WL 5177431, at *6 (D. Del. Nov. 8, 2021)). Accepting Plaintiff's allegations as true, they are sufficient to state a deliberate indifference claim because, from his allegations, reasonable steps were not taken to avoid the harm an elderly, seriously ill, medically vulnerable inmate could suffer by being forced to walk in the drenching rain with no rain gear.

Defendants Peck and Travis assert that even assuming, *arguendo*, that Plaintiff has stated a claim for deliberate indifference, they are entitled to qualified immunity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021) (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)) (per curiam). The qualified immunity assessment involves two factors: (1) whether the plaintiff sufficiently alleged a right was violated, and (2) whether that right was clearly established when it was violated to the extent "that it would have been clear to a reasonable person that his conduct was unlawful." *Williams v. Sec'y Pennsylvania*

*Dep't of Corrs.*, 848 F.3d 549, 557 (3d Cir. 2017).  The Third Circuit has emphasized the importance of "defin[ing] the right 'at the appropriate level of specificity,'" because "only then can we determine whether ' the violative nature of the [officials'] *particular* conduct is clearly established.'" *Clark v. Coupe*, 55 F.4th 167, 181 (3d Cir. 2022) (quoting *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012), and *Mullenix*, 577 U.S. at 12) (second alteration and emphasis in original).

Defendants Peck and Travis' invocation of qualified immunity does not mention the critical components of Plaintiff's claim—his age, illness, medical vulnerability; the drenching rain; and the lack of rain gear.  Rather, Defendants assert that they "have neither found a case in the jurisdiction establishing a clear right in [their] response to the COVID-19 pandemic, nor in Plaintiff being ordered to relocate to the COVID-19 quarantine building with his personal effects after he tested positive for COVID-19." (D.I. 24 at 20).  Therefore, on their pending motion, Defendants Peck and Travis have failed to provide an analysis of qualified immunity that would justify finding that they are protected by it against Plaintiff's deliberate indifference claim.  Accordingly, the State Defendants' motion to dismiss will be denied as to Plaintiff's deliberate indifference claim for damages against Defendants Peck and Travis in their individual capacities.

**V.    CONCLUSION**

Now therefore, at Wilmington, this 4th day of August, 2023;

IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for an extension to file responses to Defendants' motions to dismiss (D.I. 37) is **DENIED**.

2.    The State Defendants' motion to dismiss (D.I. 23) is **GRANTED in part**

and **DENIED in part**, as outlined herein.

    3.    Defendant Adah's motion to dismiss (D.I. 30) is **GRANTED**.

    4.    All claims and Defendants are **DISMISSED**, with the exception of Plaintiff's deliberate indifference claim for damages against Defendants Peck and Travis in their individual capacities, which will be permitted to proceed.

    5.    Defendants Peck and Travis shall file their answer within twenty-one (21) days of this Memorandum Order.

                                                        _____
                                                        UNITED STATES DISTRICT JUDGE